IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JONATHON L. MANGOLD,

     Plaintiff,

     v.               CASE NO.  17-3182-SAC

STATE OF KANSAS, et al.,

     Defendants.

MEMORANDUM AND ORDER
AND ORDER TO SHOW CAUSE

Plaintiff Jonathon L. Mangold, is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

I.  Nature of the Matter before the Court

Plaintiff originally filed this case *pro se* in the Marion County District Court.  Defendants State of Kansas and Marion County removed the action to this Court under 28 U.S.C. §§ 1441 and 1446.

Although the KDOC website reflects that Plaintiff is currently incarcerated at the Norton Correctional Facility in Norton, Kansas ("NCF"),[1] the events giving rise to Plaintiff's Complaint appear to have taken place during his detention at the Marion County Jail in Marion, Kansas ("MCJ").  Plaintiff claims violations of his 14th Amendment rights, "mistreatment of a confined person," cruel and unusual punishment, and "treating others with favoritism."

Plaintiff alleges that on September 19, 2017, he was placed in segregation after he had an altercation with CO Paul.  Plaintiff called out CO Paul's name, and CO Paul came into A–Pod

---

[1]  According to the Kansas Adult Supervised Population Electronic Repository ("KASPER"), Plaintiff was transferred to the NCF on November 7, 2017.  *See* https://kdocrepository.doc.ks.gov/kasper/.

and grabbed Plaintiff and "choked him out" all the way to A–1, then all the way into booking. Plaintiff's actions dictated a seventy-two hour segregation placement. Plaintiff was denied bedding for three hours and then was only provided a blanket for four days. Plaintiff was denied access to his legal documents "during said time" as well as phone calls to anyone including his attorney. Plaintiff was held in booking for three days without a shower, toothpaste or soap.

On September 22, 2017, CO Miles told Plaintiff that he had spoken with jail administrator "Jimmy" and Plaintiff would be moved out of lockdown that day. However, CO Zach and CO Paul refused to move Plaintiff. Instead, Plaintiff was moved to "medico" because he had an altercation with another inmate.

On September 24, 2017, Plaintiff was going across the hall to his cell after receiving a haircut in D–Pod. Inmate Dakota wanted another inmate to "whip up" on Plaintiff, so he closed Plaintiff in D–Pod as he was going to work and told another inmate to assault Plaintiff. When CO Zach opened the door to D–Pod to let Plaintiff into medico, inmate Dakota punched Plaintiff through the food slot while slapping CO Zach's hand away. Plaintiff has been on lockdown for two weeks for calling out a CO's name, flooding a booking cell, and smearing coffee on a window. Plaintiff claims inmate Dakota received preferential treatment because he only received twenty-four hours in a booking cell, transfer to B–Pod for one week, and then he received his trustee job back. Plaintiff alleges that he remains in segregation despite his request to be moved to general population, and officers say "they have nowhere to put him."

Plaintiff alleges that CO Paul interfered with his access to bond. Lorie Hill told Plaintiff that she was going to "bond him out," but CO Paul told her about Plaintiff's actions at the jail, that Plaintiff might be held on other warrants, i.e. child support, and that Plaintiff allegedly owes another bondsman.

Plaintiff alleges that he has made at least twelve medical requests to see a doctor and dentist. Even though Plaintiff eats, his stomach cramps and severely hurts as if he has not eaten for weeks. Plaintiff is having seizures too frequently, and Plaintiff cannot eat chips or cereal because his top gums are getting sore and starting to bleed. Plaintiff only has half of his top dentures, so they will not stay in even with denture cream. Plaintiff still has not been seen even though it has been almost three weeks since he first complained. Plaintiff has not had access to the canteen for three weeks, and the portions of food served are too small and do not equal federal guidelines of a 2500 calorie diet.

Plaintiff names as Defendants the State of Kansas and Marion County, Kansas. Plaintiff seeks damages of one million dollars for mental and emotional distress, and proper care and treatment.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). Section "1915A applies to all prison litigants, without regard to their fee status, who bring civil suits against a governmental entity, officer, or employee." *Plunk v. Givens*, 234 F.3d 1128, 1129 (10th Cir. 2000); *see also Martin v. Scott,* 156 F.3d 578, 579–80 (5th Cir. 1998) (finding that the statutory screening provision under § 1915A applies to all prisoners' actions against governmental entities, officers, and employees, regardless whether the prisoner is proceeding *in forma pauperi*). The independent duty to screen prisoner complaints therefore extends to prisoner actions that have been removed from state court. *See Duff v. Yount,* 51 F. App'x. 520, 521 (6th Cir. 2002) (screening removed prisoner action under §§ 1915(e) and 1915A). Accordingly, the Court will screen Plaintiff's Complaint under § 1915A. The Court

must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the

plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Defendants

To bring a § 1983 claim, a plaintiff must show a "deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees of State Coll. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000). The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Howlett v. Rose*, 496 U.S. 356, 365 (1990) ("*Will*

establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983.").   Furthermore, the Eleventh Amendment presents a jurisdictional bar to suits against a state and "arms of the state" unless the state waives its immunity.  *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)).   Therefore, in the absence of some consent, a suit in which an agent or department of the state is named as a defendant is "proscribed by the Eleventh Amendment."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).   Therefore, this action is subject to dismissal against defendant State of Kansas because this defendant is not a "person" amenable to suit under § 1983 and it is immune from suit under the Eleventh Amendment.

Plaintiff also names Marion County as a defendant.  To impose § 1983 liability on the county and its officials for acts taken by its employee, Plaintiff must show that the employee committed a constitutional violation and that a county policy or custom was "the moving force" behind the constitutional violation.  *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)).  The Supreme Court has explained that it decided in *Monell* "that a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue," and "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 387 (1989).  Plaintiff has pointed to no policy or deficiency in the training program used by Marion County or the MCJ and no causal link between any such inadequacy and the allegedly unconstitutional acts or inactions of employees at the jail.  This action is subject to dismissal as against Marion County because Plaintiff has not alleged the requisite causative custom or policy.

### 2. *Injunctive Relief*

Plaintiff also seeks injunctive relief in the form of "proper care and treatment." Because Plaintiff is no longer detained at the MCJ, his requests for injunctive relief are moot.

Article III of the Constitution extends the jurisdiction of federal courts only to "live, concrete" cases or controversies. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded by statute on other grounds*. Consequently, "[m]ootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande*, 601 F.3d at 1109 (internal quotations and citations omitted).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 1974). The Tenth Circuit has applied this principle to § 1983 actions brought by inmates, and held that an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the employees of the original prison concerning the conditions of confinement. *See Green v. Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997); *see also Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (recognizing prisoner's release from prison mooted his § 1983 claim for injunctive relief); *Love v. Summit County*, 776 F.2d 908, 910 n.4 (10th Cir. 1985) (noting transfer of inmate to different prison renders his § 1983 claim for injunctive relief moot).

The mootness doctrine is based on the reality that even if the inmate receives injunctive relief, the defendants from the former prison would be unable to provide the relief to plaintiff. Because Plaintiff is no longer incarcerated at the MCJ, his claims for injunctive relief are moot and subject to dismissal.

### 3. Damages

Plaintiff seeks damages of one million dollars for mental and emotional distress. Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury. Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

## IV. Motion for Appointment of Counsel

Plaintiff has filed a motion for appointment of counsel (Doc. 5). Defendants filed a response (Doc. 7) in opposition. Plaintiff asserts that he only understands "a layman portion of the law," and he needs counsel to continue further in these proceedings.

The Court has considered Plaintiff's motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have

assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice to refiling the motion if Plaintiff's Complaint survives screening.

## V.  Motion for Transport

Plaintiff has filed a motion for transport (Doc. 6), moving the Court to order his transport for all court appearances. Because Plaintiff's Complaint has not survived screening, and there are no scheduled court dates, the motion is denied.

## VI.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper Amended Complaint upon court-approved forms that cures all the deficiencies discussed herein.[2]

---

[2] In order to add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (17-3182-SAC) at the top of the first page of his Amended Complaint and he must name every defendant in the caption of the Amended Complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

Plaintiff is given time to file a complete and proper Amended Complaint in which he (1) shows he has exhausted administrative remedies for all claims alleged; (2) raises only properly joined claims and defendants; (3) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (4) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an Amended Complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Appoint Counsel (Doc. 5) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Transport (Doc. 6) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **January 5, 2018,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **January 5, 2018**, in which to file a complete and proper Amended Complaint to cure all the deficiencies discussed herein.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated in Topeka, Kansas on this 8th day of December, 2017.**

**S/ Sam A. Crow**
**Sam A. Crow**
**U.S. Senior District Judge**